STATE ex rel. STATE HIGHWAY COM-MISSION, Plaintiff-Respondent,

v.

P. R. LYNCH et al., Defendants-Appellants.

No. 54618.

Supreme Court of Missouri, Division No. 1.

Sept. 13, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 11, 1971.

Robert L. Hyder, Jefferson City, Minor C. Livesay, Kansas City, Wm. T. Powers, Jr., Springfield, for plaintiff-respondent.

Arthur B. Cohn, Waynesville and J. W. Grossenheider, Lebanon, for appellants.

WELBORN, Commissioner.

Condemnation proceeding for right-of-way for Interstate Highway 44 improvement in Pulaski County. Commissioners awarded P. R. Lynch, Leoti A. Lynch and Alfred N. Lynch $298,140 damages for 3.02 acres and improvements taken from them. Both parties excepted to the commissioners' award. On a jury trial, the Lynches' damages were assessed at $205,000. Trial court, on March 18, 1969, entered judgment against Lynches for $93,140 excess of the commissioners' award over the amount of the verdict, with interest at the rate of 6% per year from the date of payment of the award, December 28, 1960. Lynches appealed.

Lynches were owners of a 10.64-acre tract, fronting 962.2 feet on the north side of City Route 66 in the city of St. Robert. The tract was located at the eastern junction of City Route 66 and Route 66. Lynch had subdivided the tract into lots and installed gas, water and sewer systems in

the property. He operated a furniture store which occupied two buildings near the southeast corner of the tract. Adjacent to those buildings was a building which housed a L–P gas operation run by Lynch's sons. Lynch also operated a mobile home court on the property, with forty-eight hookups available for mobile homes.

The taking by the state involved all of the frontage of the Lynch property along City Route 66, to a depth of some 334 feet along the east side of the tract and some 35 feet along the west side. Among the improvements taken were the one-story furniture store building occupying some 10,100 square feet and completed in 1960, a two-story 40′ x 70′ building in which a used furniture business was conducted, a well house, a furniture storage house, a small television repair shop building, a privy, a gas equipment storage shed, a gas loading dock, a gas service building, the gas business office building, a well and pump, parts of the water, gas and sewer systems, eighteen mobile home hookups and three mobile homes.

The state paid the $298,140 awarded by the commissioners to the Lynches, by the report filed December 16, 1960, into the registry of the court on December 28, 1960, and defendants were so notified.

The trial on the Lynches' damages did not begin until December 10, 1968. The record here shows changes of venue, changes of judge and, in 1967, a motion by counsel for defendants for permission to withdraw because of refusal of defendants to confer with them. The motion recites: "This case has been previously set for trial many times, and defendants have insisted that the cause not be tried and failed and refused to cooperate with counsel for preparation for trial and the handling of the case." The motion to withdraw was sustained.

At the trial Mr. Lynch testified to before and after taking values of $576,833.83 and $72,500, or damages of $504,333.83. Other witnesses for defendants placed the dam-

ages at $430,426, $442,502.32 and $461,548. Plaintiff's witnesses placed a before and after value of $184,900 and $64,500; $184,000 and $46,000.

The jury returned its verdict on December 13, 1968. On December 20, 1968, defendants filed a motion for new trial. On December 23, 1968, plaintiffs submitted a form of judgment to which defendants objected. The objections to the judgment and defendants' motion for new trial were taken up by the court on March 17, 1969. At that time, counsel for defendants stated their objection to the inclusion of interest in the judgment, asserting that § 523.045, RSMo 1969, V.A.M.S., which purported to allow interest against defendants from the date of payment of the commissioners' award, whenever the jury verdict was less than the amount awarded by commissioners, is unconstitutional. On March 18, 1969, the court entered the judgment here appealed from. Defendants filed a motion to amend the judgment, asserting again the unconstitutionality of § 523.045, and that the judgment entered on March 18, 1969, substantially modified the jury verdict and docket entry dated December 13, 1968, and was in effect a substitute judgment entered more than thirty days after the verdict, contrary to Rules 73.01 and 75.01 of the Rules of Civil Procedure. The motion was overruled and this appeal followed.

The first contention of appellants is that the judgment is erroneous in allowing interest on the excess of the commissioners' award over the verdict because § 523.045, RSMo 1969, V.A.M.S., purporting to allow such interest, is unconstitutional under the due process clauses of the state and federal constitutions. They also contend that the allowance of interest against the condemnee in such circumstances amounts to the taking of their property without just compensation, in violation of Article I, § 26, Constitution of Missouri, 1945, V.A.M.S. Appellants' argument states:

"In order to protect himself, the property owner would have to invest the money paid into court under the commissioners' award so that it would draw 6% interest in order that he not be penalized in the event the amount found due him by due process of law—a jury trial—is not substantially less than the amount of the commissioners' award. This deprives him of his right to invest the proceeds in a business similar to the one taken and to continue with his normal, lawful activities so, in effect, it deprives him of his property without due process of law."

No citation of authority in support of this proposition is offered. The author of a comment: "INTEREST ON EXCESS CONDEMNATION AWARDS PAID INTO COURT," 29 Mo.Law Rev. 355, 362, raised a similar question and apparently found no authoritative answer. In Sloan v. Commonwealth, Department of Highways, Ky., 405 S.W.2d 294, 297 [9], the constitutionality of a similar Kentucky statute [§ 177.087(5), Ky.Rev.Stat.] was upheld against the contention that it had the effect of depriving the landowner of just compensation. The court there noted that the landowner had the option either to draw down the amount deposited or leave it until final determination of the damages. The defendants here had a similar option and had they not withdrawn the amount deposited, they would have had no liability for interest. State ex rel. State Hwy. Comm. v. Paul, Mo.Sup., 368 S.W.2d 419.

■ In our opinion, the statute is within the legislative authority and does not contravene the constitutional provisions relied upon. The landowner is afforded a choice. If he elects to withdraw the amount deposited, he does so with knowledge of the consequences of a smaller verdict upon jury trial. The legislature was not required to determine with exactness what the possible profit to the landowner might be from the use of the funds before he is required to return the excess over that to which he is entitled. The six per cent exacted is a reasonable figure and does not deprive the landowner of his property without due process or deny him just com-

pensation for his property. Sloan v. Commonwealth, supra.

On oral argument, appellants advanced the contention that the record does not show that they drew down the money deposited. No such contention was presented to the trial court. The judgment awards "interest at the rate of six percent per annum from and after the date of the payment of the award, that is, the 28th day of December, 1960, * * *." Not having attacked that recital in the trial court, defendants will not be now heard to complain.

Complaint is made that the judgment constituted a new judgment, entered more than thirty days from the date of the jury verdict and docket entry of December 13, 1968. No formal judgment was entered by the court on the date of the verdict. The minute entry merely recited the verdict assessing the defendants' damages at $205,-000. The final judgment was required, by reason of § 523.045, RSMo 1969, V.A.M.S., to take into consideration how that sum compared with the commissioners' award and the payment thereof, and to award recovery and interest accordingly. State ex rel. State Highway Commission v. Commonwealth Drive-in Theatres, Inc., Mo. App., 413 S.W.2d 526, 528–529 [2]. The statute eliminated the necessity for the jury's verdict to include interest as a basis for any judgment for interest on either the deficiency or excess determined by the verdict. See State ex rel. State Hwy. Comm. v. Green, Mo.Sup., 305 S.W.2d 688, 692–695 [4–6].

Therefore, if it be assumed as argued by appellants that the acceptance of the verdict and its entry constituted the rendition of judgment by the court, the judgment would be that required by the verdict and § 523.045, supra.

If, on the other hand, the acceptance of the verdict by the trial court amounted to rendition of judgment without including interest, the question of interest may be presented to the court either formally or informally. State ex rel. State Hwy. Comm. v. Galloway, Mo.Sup., 300 S.W.2d 480; Arkansas-Missouri Power Company v. Hamlin, Mo.App., 288 S.W.2d 14. (We are aware that in Green, supra, the Supreme Court refused to accept the basic premise of Galloway and Hamlin. However, those cases would still afford authority as to the method of raising the question of interest.) The state, as the prevailing party obliged to provide the formal judgment, by letter dated December 23, did present to the court a form of judgment which called for interest. That was within fifteen days of the verdict and would have effectively prevented any judgment, presumed to have been entered as of the date of the verdict and excluding interest, from becoming final, particularly since there had also been filed a timely motion for new trial. Supreme Court Rule 78.02, V.A.M.R.

Therefore, the judgment here entered was within the authority of the trial court which acted timely in the premises.

Appellants' second assignment of error relates to the trial court's refusal to permit defense counsel, on redirect examination of Mr. Lynch, to produce evidence based upon income tax returns of the cost of the new furniture store building. The problem arose in the following context:

Mr. Lynch, on direct examination, testified in detail about the construction of the building in which the used furniture business was conducted, referred to as "Building No. 2," completed in 1955. He placed a reasonable market value of $52,500 on the building at the time of the taking. On cross-examination, he was asked whether or not the cost of the building was $20,800. Lynch denied that it was. He was then shown the 1960 partnership income tax return for Lynch's Furniture & Appliance, which showed the cost of the building in question as $20,800. Lynch admitted that that was the cost shown on the return and attempted to explain the figure as one used before completion of

the building and which had not been increased when the building was finally completed.

On re-examination, counsel for defendants sought to inquire of Lynch concerning the cost, as shown on the 1960 tax return, of the *new* furniture store building.

Objection on the grounds that the statement would be self-serving and that it had not been gone into on cross-examination was sustained. Defendants offered to prove that the tax return would have shown a cost for the building of $161,025.38, compared with Lynch's testimony that the fair market value of the structure at the time of taking was $151,500.

Here, appellants invoke the curative admissibility doctrine, citing Jefferson v. Biggar, Mo.Sup., 416 S.W.2d 933, 937 [1].

■ This is not a case for application of the curative admissibility doctrine, for the following reasons:

First, appellants objected to the state's evidence which they now claim gave them the right to offer curative evidence. See Buck v. St. Louis Union Trust Co., 267 Mo. 644, 185 S.W. 208, 213.

Second, the curative evidence was not confined to the evidential point to which the state's evidence was directed. Dorn v. St. Louis Public Service Co., Mo.App., 250 S.W.2d 859, 866 [9].

The trial court's exclusion of the evidence offered by appellants was not error. Dorn v. St. Louis Public Service Co., supra.

Appellants object to the trial court's refusal to permit Mr. Lynch to testify that it cost $10,000 to move the furniture supply used in the business.

Upon the state's objection to such inquiry defendants made an offer of proof as follows:

" * * * However, we propose to prove here that Mr. Lynch had to pay out of his own pocket approximately $10,000.00 in order to retain for himself the personal property located on this property that was taken by the state, which the state could not condemn and did not condemn, but allowed Mr. Lynch to keep and that certainly is an element of damages that was caused to him by this condemnation and we so offer to prove."

■ The case cited by appellants here, St. Louis, K, & N.W. R. Co. v. Knapp, Stout & Company, 160 Mo. 396, 61 S.W. 300, laid down the rule that the expense of removal of personal property from condemned realty was "not to be estimated as a distinct element of damages." 61 S.W. 304. Appellants offer no explanation of their contention that removal cost was a proper item for consideration in determining the before taking fair market value of the property. No authority is offered which supports such proposition. There has been no demonstration of error on the part of the trial court.

Appellants' next assignment of error relates to evidence relied upon by the respondent for the purpose of showing sales of comparable property which formed a partial basis for opinions of respondent's witnesses as to the value of appellants' property.

■ The highway commission offered as comparable sales deeds involved in four transactions and the testimony of a witness regarding two real estate purchases. We need not describe in detail the property involved in those transactions. They did involve commercial property fronting on City Route 66. No objection is made that the sales were remote from the point of time or of property not in reasonable proximity to the property taken. Objection is based primarily upon the smaller size of the comparable tracts and differences in topography between such tracts and the Lynch tract. Such differences were fully explored in examination of the witnesses. They are not such as would render the rul-

ing of the trial court that such transactions might be shown an abuse of the acknowledged discretion (State ex rel. State Hwy. Comm. v. Koberna, Mo.Sup., 396 S.W.2d 654, 662 [8–11]) lodged in the trial court in passing upon such matters. The transactions were such as might be reasonably considered by persons contemplating the purchase of the Lynch property. "Artificial rules of evidence which exclude from the jury matters which men consider in their everyday affairs hinder, rather than help, the arrival at a just result." State ex rel. State Hwy. Comm. v. Bloomfield Tractor Sales, Inc., Mo.App., 381 S.W.2d 20, 24. The transactions here involved were fairly comparable and did shed light on the issue before the jury, i. e., the before and after value of the Lynch property. There was no error in the admission of such evidence. State ex rel. State Hwy. Comm. v. Koberna, supra; State ex rel. State Hwy. Comm. v. Klipsch, Mo.Sup., 392 S.W.2d 287, 289–290 [2–4]; State ex rel. State Hwy. Comm. v. Hamel, Mo.Sup., 404 S.W.2d 736, 739–740 [6–11]; State ex rel. State Hwy. Comm. v. Gann, Mo.Sup., 407 S.W.2d 898, 901.

Appellants' next assignment of error relates to the admission into evidence of twenty-four photographs, used by the highway commission in cross-examination of Mr. Lynch. Only fifteen of the twenty-four photographs have been filed in this Court. The transcript shows that only those fifteen were exhibited to the jury. The photographs here before us include three exterior views of the furniture storage building, three of the exterior and two of the interior of the gas company office, one of the interior of the new furniture building and five of the interior and one of the exterior of the used furniture building. Appellants' objections are that the photographs did not fairly depict the improvements involved because they overemphasized defects in the buildings and thereby tended to mislead and confuse the jury as to the value of such improvements.

■ Appellants acknowledge the wide discretion accorded the trial court in pass-

ing upon the admission of photographic evidence in condemnation proceedings. State ex rel. State Hwy. Comm. v. Cone, Mo.Sup., 338 S.W.2d 22, 27 [12, 13]; State ex rel. State Hwy. Comm. v. Eilers, Mo.Sup., 406 S.W.2d 567, 570–571 [1–5], [6–8]; Annotation, "Eminent Domain: Admissibility of Photographs or Models of Property Condemned," 23 A.L.R.3d 825, 831, § 3[a]. Mr. Lynch had testified at length concerning the construction and use of the buildings depicted in the photographs objected to. He had also expressed an opinion as to the fair market value of each at the time of the taking. The state had the obvious right to cross-examine Mr. Lynch as to the condition of the buildings, that being a factor which would bear upon the value of the improvements. The photographs depicted matters which related to the condition of the buildings. Mr. Lynch was given full opportunity to explain the conditions depicted. The photographs were material and relevant to the sole matter at issue, i. e., the damages sustained by the landowners. The trial court did not err in overruling appellants' objections on the grounds that the photographs diverted the attention of the jury from the real issue. They were, in fact, directed to the real issue, could be helpful to the jury, and were, therefore, properly admitted. State ex rel. Hwy. Comm. v. Eilers, supra.

Appellants' final point on this appeal relates to the trial court's refusal to permit the use of an exhibit on which appellants proposed to list the value of each item of improvements as testified to by each witness. Appellants urge that the listing and its use should have been permitted because of the complexities of the case. According to appellants some such compilation was necessary in order to permit the jury to consider adequately all of the evidence as to values and arrive at a fair determination of the damages to appellants.

■ Appellants have cited no authority directly supporting this contention. The trial court did not prohibit their making such a list. The ruling simply was that

such a list should not be maintained in the constant view of the jury. The trial court offered to reconsider the matter if appellants desired to use such a list in summation, but appellants elected not to take advantage of this offer.

We are of the opinion that this was a matter in which the trial court was called upon to exercise its discretion in determining what matters should be in constant view of the jury. No abuse of such discretion has been shown.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.